# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LINDA AIDOO, et al.
    Plaintiffs,

v.

ERALD CELA, et al.
    Defendants.

No. 3:16-cv-147 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

This case arises from a nighttime vehicle accident on Interstate 95 ("I-95"). Am Compl., ECF No. 17, ¶¶ 1, 4, 21; Pls. Local Rule 56(a)(2) Stmt. Mat. Facts ("Pls. 56(a)(2) Facts"), ECF No. 87, ¶¶ 1, 3; Defs. Local Rule 56(a)(1) Stmt. Mat. Facts ("Defs. 56(a)(1) Facts"), ECF No. 75, ¶¶ 1–3. Pennsylvania resident Erald Cela ("Defendant-driver") allegedly drove a truck owned by Carlisle Carrier Corporation ("Defendant-owner"),[1] a Pennsylvania corporation, into Linda Aidoo's ("Plaintiff-driver") allegedly stopped and disabled Toyota Corolla ("Toyota" or "Corolla"). Am. Compl. Linda's sister, Nana Aidoo, allegedly was a passenger ("Plaintiff-passenger") in the car. Pls. 56(a)(2) Facts ¶¶ 1, 3.

Six motions are now pending: (1) Defendants' motion for summary judgment, Defs. Mot. for Summ. J., ECF No. 74; (2) Plaintiffs' motion for summary judgment on Defendants' counterclaim of intentional spoliation, Pls. Mot. for Summ. J., ECF No. 80; (3) Defendants' motion for sanctions for Plaintiffs' alleged spoliation of evidence, Defs. Mot. for Sanctions, ECF No. 60; (4) Plaintiffs' motion to preclude certain opinions of Steven Rickard and request for a Daubert hearing. Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and

---

[1] Plaintiffs first named M & K Equipment as the Defendant-owner. Defs. Notice of Removal, ECF No. 1. Plaintiffs replaced M & K Equipment with Carlisle Carrier Corp. in the Amended Complaint. Am Compl., ECF No. 17.

Request for Daubert Hearing, ECF No. 90; (5) Defendants' motion to preclude the report and testimony of rebuttal expert Kristopher Seluga. Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga, ECF No. 65; and (6) Defendants' motion to preclude the expert testimony of John Myer, Defs. Mot. in Limine to Preclude Purported Expert Test. of Trooper John Myer, ECF No. 69.

For the reasons set forth below, the Court **DENIES** Defendants' motion for summary judgment, Defs. Mot. for Summ. J., ECF No. 74, and **DENIES** as moot Plaintiffs' motion for summary judgment on Defendants' counterclaim of intentional spoliation, Answer, ECF No. 16.

The Court also **DENIES** Defendants' motion for sanctions for Plaintiffs' alleged spoliation of evidence, Defs. Mot. for Sanctions, ECF No. 60.

Finally, with respect to the various motions to preclude expert testimony, the Court **DENIES** without prejudice to renewal before or at trial Plaintiff's motion to preclude certain opinions of Steven Rickard and **DENIES** Plaintiffs' request for a Daubert hearing, Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing, ECF No. 90, **DENIES** without prejudice to renewal before or at trial Defendants' motion to preclude the report and testimony of Kristopher Seluga, Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga, ECF No. 65, and **DENIES** without prejudice to renewal before or at trial Defendants' motion to preclude the expert testimony of John Myer, Defs. Mot. in Limine to Preclude Purported Expert Test. of Trooper John Myer, ECF No. 69.

This case is now scheduled for trial; jury selection will be conducted on March 25, 2019, with trial to begin on March 26, 2019.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.  Factual Allegations

#### 1.    The Car Accident

On August 18, 2015, at roughly 3:00 a.m., Linda Aidoo and Nana Aidoo were allegedly stuck in traffic on I-95 southbound near Stratford, Connecticut. Am Compl. ¶¶ 1, 4, 21; Pls. 56(a)(2) Facts ¶¶ 1, 3; Defs. 56(a)(1) Facts ¶¶ 1–3. Linda Aidoo's Toyota was allegedly at a complete stop for about five minutes. Pls. 56(a)(2) Facts, Ex. 4 [Dep. of Nana Aidoo (June 16, 2017)] at 26–27.

When traffic started to move again, the car allegedly would not. *Id*. at 27. Nana Aidoo recalls asking her sister if the car was in drive, and Linda Aidoo allegedly assured her that it was. *Id*. Nana Aidoo allegedly suggested that Linda Aidoo "put [the car] in neutral to see if it . . . will accelerate, but it didn't." *Id*. She allegedly put the car in park and then in drive again; the car

---

[2]The following factual allegations are taken from the Amended Complaint; Answer, ECF No. 18; Plaintiffs' memorandum in opposition to the motion for summary judgment, ECF No. 86; Plaintiffs' Local Rule 56(a)(2) statement of facts in opposition to summary judgment and exhibits thereto; Defendants' motion for summary judgment; Defendants' Local Rule 56(a)(1) statement of undisputed material facts in support of Defendants' motion for summary judgment and exhibits thereto; Defendants' memorandum of law in support of Defendants' motion for summary judgment, ECF No. 76; Defendant's reply brief, ECF No. 92; Defendants' Motion in Limine to Preclude Purported Expert Testimony of Trooper John Myer, and exhibits thereto, ECF no. 69; Defendants' Memorandum of Law in Support of Motion in Limine to Preclude Purported Expert Testimony of Trooper John Myer, ECF No. 70; Plaintiffs' Objection to Defendants' Motion in Limine Regarding Testimony of Trooper John Myer, and exhibits thereto, ECF No. 85; Defendants' Reply Brief in Further Support of Motion in Limine to Preclude Purported Expert Testimony of Trooper John Myer, ECF No. 89; Plaintiffs' Motion in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing, ECF No. 90; Memorandum of Law in Support of Motion in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing, ECF No. 91; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing, and exhibits thereto, ECF No. 93; Plaintiffs' Reply to Defendants' Opposition to Motion in Limine to Preclude Certain Opinions of Steven W. Rickard, ECF No. 94; Defendants' Motion in Limine to Preclude Rebuttal Expert Report and Testimony of Kristopher Seluga, and exhibits thereto, ECF No. 65; Defendants' Memorandum of Law in Support of Motion in Limine to Preclude Rebuttal Expert Report and Testimony of Kristopher Seluga, ECF No. 66; Plaintiffs' Objection to Defendants' Motion in Limine to Preclude Rebuttal Expert Report and Testimony of Kristopher Seluga, ECF No. 79; and Defendants' Reply Brief in Further Support of Motion in Limine to Preclude Rebuttal Expert Report and Testimony of Kristopher Seluga, ECF No. 84.

allegedly just rolled backward. *Id.* As Nana Aidoo remembers, the engine was running and the interior lights were working, but the car would not move forward. *Id.* at 27–28. Nana Aidoo recalls telling Linda Aidoo "to put the hazard lights on." *Id.* at 28.

At some point, a fellow motorist allegedly called 911 to report "a car double parked . . . in the middle . . . on I-95 South" with "its hazards on." *Id.*; Pls. 56(a)(2) Facts at 4, 7; Ex. 1 [Audio recording of third-party 911 caller.]. Nana Aidoo also called 911, twice. Pls. 56(a)(2) Facts, Ex. 2, ECF No. 87-2.

Nana Aidoo allegedly first called 911 to report being "stuck in the middle of the road." Pls. 56(a)(2) Facts, Ex. 2, ECF No. 87-2; Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 2. The 911 operator allegedly advised Plaintiffs to move the car to the shoulder, but Nana Aidoo allegedly said "we cannot move the car because every time we move it, we are backing up [.]" *Id.* Nana Aidoo finished that call, and later allegedly called 911 a second time to ask if someone was coming to help. Pls. 56(a)(2) Facts, Ex. 2; Ex. 3 [Dep. of Linda Aidoo (June 16, 2017)] at 70.

After her second 911 call, Nana Aidoo allegedly called the Aidoo sisters' parents. Pls. 56(a)(2) Facts, Ex. 4 [Dep. of Nana Aidoo] at 21. Nana Aidoo recalls her father suggesting that they try to shift right or left; Nana Aidoo allegedly told him "we can't do that because the car is not moving forward or to the left or right [.]" *Id.* at 22. At 3:08 a.m., while Nana Aidoo allegedly was still on the phone with her father, Erald Cela allegedly drove a truck owned by Carlise into the back of the Toyota. *Id.* at 21; Pls. 56(a)(2) Facts ¶ 1. Nana Aidoo said that she did not see Mr. Cela's approaching vehicle or realize that a collision was imminent. Pls. 56(a)(2) Facts, Ex. 4

[Dep. of Nana Aidoo] at 32–33. Following the collision, Nana Aidoo allegedly unbuckled her seatbelt and got out of the car. *Id*. at 33.

Linda Aidoo does not remember the period after the collision. Pls. 56(a)(2) Facts, Ex. 3 [Dep. of Linda Aidoo] at 77. She remembers Nana Aidoo speaking with their father before the collision and then waking up in the intensive care unit. *Id*. The state trooper who responded to the crash, John Myer, recorded that both Linda and Nana Aidoo "complained of chest pain and were transported to Bridgeport Hospital." Pls. 56(a)(2) Facts, Ex. 7 at 2 [Connecticut Uniform Police Crash Report (Aug. 18, 2015) (duplicated at Pls. Obj. to Defs. Mot. in Limine Regarding Test. of Trooper John Myer, ECF No. 85, Ex. A, ECF No. 85-1)]. Linda Aidoo does not remember speaking to Trooper Myer at the scene of the accident. Pls. 56(a)(2) Facts, Ex. 3 [Dep. of Linda Aidoo] at 78.

In his police report, Trooper Myer noted that the weather was clear and dry, and that the road was straight and dark but lighted. Pls. 56(a)(2) Facts, Ex. 7 at 1, 3. He further noted that the collision happened near an entrance/exit ramp and that a "work zone" or "power train" issue with the Aidoo car could have been contributing circumstances. *Id*. at 1, 3. Trooper Myer reported "no indications of braking . . . in the roadway." *Id*. at 10.

Mr. Cela told Trooper Myer that he never saw the car before hitting it. Pls. 56(a)(2) Facts, Ex. 5 [Dep. of Erald Cela (Jan. 29, 2018)] at 55, Ex. 7 at 2. Later, Mr. Cela struggled to remember whether he saw the vehicle in the moments before the collision or not. Pls. 56(a)(2) Facts, Ex. 5 [Dep. of Erald Cela] at 51–55 (Q: "Is it true that you never saw [the Toyota] before you hit it with your truck? A: Yes . . . . I saw that car in the last moments [.] Is it true that you told the policeman that you never saw [the Toyota] before you hit it? A: Yeah, it's true [.] Q: So

5

you saw – is it fair to say that you saw my client's vehicle just a second or two before you hit it? Is that fair? A: I don't know. I don't know. I don't – I don't remember that moment."). Mr. Cela also told Trooper Myer that the Toyota had "no lights on." *Id*. at 57. Mr. Cela later suggested that he could not remember whether the lights or flashers were on. *Id*. Trooper Myer reported Mr. Cela's condition at the crash scene as "apparently normal" (i.e., as opposed to physically impaired, emotional, ill, asleep or fatigued, or under the influence). Pls. 56(a)(2) Facts, Ex. 7 at 1, 7.

Trooper Myer reported that Linda Aidoo's Toyota sustained "disabling damage." *Id*. at 3; *see also* Pls. 56(a)(2) Facts, Ex. 9 [Photos of Linda Aidoo's vehicle following the accident, taken by Anthony Aidoo (father) on Aug. 26, 2015.]. Following the accident, emergency medical staff took Linda and Nana Aidoo to the hospital. *Id*. at 8–9. As a result of the accident, Linda and Nana Aidoo allege a host of physical injuries, medical costs, and future harms. Am. Compl. ¶¶ 14–17, 34–37; Linda Aidoo also claims lost income. Am. Compl. ¶ 18. They both seek monetary damages under theories of negligence and vicarious liability. Am. Compl.

Defendants also seek monetary relief and assert the affirmative defenses of sudden emergency and comparative negligence. Answer.

## 2. Alleged Spoliation of Evidence

Defendants initially alleged counterclaims for spoliation of evidence. Answer pp. 9–13. Defendants seek sanctions against Plaintiffs for their alleged spoliation of evidence. Defs. Mot. for Sanctions, ECF No. 60. The spoliation counterclaim and motion for sanctions arise from Plaintiffs' purported loss or destruction of the Toyota during discovery. *Id*.

After the accident, Linda Aidoo's vehicle was taken to a holding lot at Copart, "an auto salvage and auction yard located in Hartford." Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions at 3, Ex. F [Copart Lot Display Log], Mar. 25, 2016. Nationwide, which insured Linda Aidoo's vehicle, *id*. at 3, began requesting that she release the hold on the Toyota as early as September 23, 2015. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions, Ex. M [E-mail from Christina Feeney, Plaintiffs' paralegal, to Joseph D'Amico, Associate Claims Specialist for Nationwide (Sept. 23, 2015, 10:45a.m. EST)]. On October 8, 2015, Nationwide took title of Ms. Aidoo's Toyota. *Id*. at 3, Ex. F at 13 [Showing "Pass Through Title" on 10/08/15]. The Copart record of the title transfer notes that Nationwide planned to sell the car on December 22, 2015 at a live auction. *Id*.[3]

On October 9, 2015, Defendants agreed to release the hold on the vehicle so long as they could have Plaintiffs' "'experts' photos of the Aidoo vehicle." Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions, Ex. O [E-mails between Jim Decinti, Defendants' attorney, and Christina Feeney, Plaintiffs' paralegal (Oct. 8, 2015)]. Nationwide did not dispose of the vehicle that month. *Id*., Ex. F at 13 [Showing "Pass Through Title" on 10/08/15].

On December 2, 2015, Joseph D'Amico, a Nationwide Associate Claims Specialist, called Copart to set up a third-party inspection of the vehicle for December 3, 2015. *Id*., Ex. F at 6. That inspection took place and included both Plaintiffs' and Defendants' experts. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions at 5.

On December 9, 2015 at 9:16 a.m., Nationwide informed Plaintiffs that it was "going to release the hold on Ms. Aidoo's vehicle." *Id.*, Ex. Q [E-mails between Christina Feeney,

---

[3] On March 25, 2016, likely during the discovery process, Copart produced these records indicating that Nationwide intended to sell the car in December of 2015. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions, Ex. F.

Plaintiffs' paralegal, and Joseph D'Amico, Associate Claims Specialist for Nationwide (Dec. 9, 2015)]. Before releasing the hold, Joseph D'Amico wrote to Christina Feeney, a senior paralegal at Carter Mario Injury Lawyers (i.e., representing Plaintiffs): "I wanted to make sure that you got everything you needed with your most recent inspection. Please confirm whether it is OK to release the hold." *Id*.

That afternoon, at 2:46 p.m., Ms. Feeney wrote to Plaintiffs' expert and Defendants' attorney to ask if the December 3, 2015 inspection had taken place and the vehicle could be released. *Id.*, Ex. R [E-mails between Christina Feeney, Plaintiffs' paralegal, Gregory Witte, Plaintiffs' expert, and Jim Decinti, Defendants' attorney (Oct. 8, 2015)]. At 2:52 p.m., Plaintiffs' expert replied "Yes. We should be all set." *Id.* Six minutes later, Plaintiffs' paralegal wrote to Mr. D'Amico, "You are OK to release the hold on Ms. Aidoo's vehicle." *Id.*, Ex. Q.

The next day, at 2:01 p.m., Defendants' attorney authorized the release of the vehicle, *id.*, Ex. T [E-mail from Jim Decinti, Defendants' attorney, to Christina Feeney, Plaintiffs' paralegal (Dec. 10, 2015 at 02:01 EST)], but changed his mind less than an half an hour later and suggested that Defendants might want to purchase the vehicle. *Id.*, Ex. U [E-mails between Jim Decinti, Defendants' attorney and Gregory Witte, Plaintiffs' expert (Dec. 10, 2015)]; *see also* Defs. Mot. for Sanctions at 5.

Plaintiffs then claimed to have attempted to regain a hold on the vehicle. *See* Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions, Ex. V [E-mails between Jim Decinti, Defendants' attorney, and Carla Minniefield, Plaintiffs' attorney (Dec. 10, 2015)]; *id.*, Ex. W [E-mail from Christina Feeney, Plaintiffs' paralegal to Joseph D'Amico, Associate Claims Specialist for Nationwide (Dec. 10, 2015, 2:46 p.m. EST)]; *id.*, Ex. X [Call log for call to Copart, vehicle hold

facility, (Dec. 16, 2015, 12:39 p.m. EST)]; *id.*, Ex. Y [E-mail from Alison Gillotti, Plaintiffs' paralegal, to Jim Decinti, Defendants' attorney, Jan. 1, 2016 8:55 a.m. EST]).

Nevertheless, Nationwide sold the car at a December 22, 2015 auction.

### 3. Proposed Experts of the Parties

#### a. Steven Rickard

Mr. Rickard is President of Steven W. Rickard and Associates, Inc. Mem. of Law in Supp. of Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert hearing, ECF No. 91; *id.*, Ex. B, ECF No. 91-2. From 1970-1992, he served as a Pennsylvania state trooper. *Id.* He earned an Associate Degree in Police Science and Administration from Harrisburg Area Community College in 1974. *Id.*, Ex. B. Mr. Rickard has attended more than two dozen seminars, ranging from 8–100 hours each, on various aspects of accident reconstruction. *Id.*

Mr. Rickard submitted a crash investigation report to Defendants in December 2017. *Id.* The report contains Mr. Rickard's analysis of the Connecticut state police accident report and scene diagrams, photographs of Plaintiffs' vehicle, and the depositions of Plaintiffs and Trooper Myer. *Id.* at 1.

#### b. Kristopher Seluga

Kristopher Seluga is a Forensic Engineer employed by Technology Associates, who earned a Bachelor of Science in Mechanical Engineering in 2000 and a Master of Science in 2001, both from the Massachusetts Institute of Technology. Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga, ECF 65-3 [Kristopher J. Seluga Resume, n.d.].

Mr. Seluga submitted a crash investigation report to Plaintiffs in March 2018, *id.*, before the deadline for disclosure of rebuttal experts. Pls. Obj. to Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga at 1; Amended Scheduling Order, ECF No. 52. The introduction to the report states:

> Beginning in January 2018, I investigated a motor vehicle crash that occurred on August 18, 2015 . . . . when a tractor-trailer driven by Mr. Erald Cela rear ended a Toyota Corolla that was disabled and stopped in a travel lane of I-95. [] This report contains the details of my investigation, research and analysis regarding this incident. In addition, it contains my conclusions and opinions regarding the circumstances and causes of the crash and in particular, my review of the report provided by Mr. Steven Rickard and his assumptions, analysis and opinions.

*Id.* at 4.

### c. Trooper John Myer

John Myer has been a Connecticut state trooper for over 13 years. Pls. Obj. to Defs. Mot. in Limine Regarding Test. of Trooper John Myer, ECF No. 85, at 1. He earned a high school diploma in 1996 and has completed "various college classes." Defs. Mot. in Limine to Preclude Purported Expert Test. of Trooper John Myer, Ex. C, ECF No. 69-3 [Dep. of Trooper John Myer (June 16, 2017)] at 7 [Dep. at 23]. "One of [Mr. Myer's] primary responsibilities as a Trooper is to investigate motor vehicle accidents on Connecticut highways including I-95 where this collision occurred." *Id.* at 1–2.

Mr. Myer investigated this car accident. *Id.* at 2. His investigation involved observing lighting and weather conditions, and talking with Linda and Nana Aidoo and Erald Cela. *Id.*; Ex. A, ECF 85-1 [Connecticut Uniform Police Crash Report (Aug. 18, 2015) (duplicated at Pls. 56(a)(2) Facts, Ex. 7.)]. Mr. Myer produced a 10-page "Crash Report" following the collision. *Id.*, Ex. A [Connecticut Uniform Police Crash Report (Aug. 18, 2015)].

On February 21, 2018, several months after the deadline for Plaintiff's disclosure of experts, Plaintiffs disclosed their intention to call Mr. Myer as an expert to Defendants. Pls. Supp. Non-retained Expert Disclosure, ECF No. 85-2; Order Modifying Scheduling, ECF No. 46. Before this disclosure, both parties had deposed Mr. Myer and "questioned him at length regarding his opinions and facts set forth in his police report [.]" Pls. Obj. to Defs. Mot. in Limine Regarding Test. of Trooper John Myer at 10.

### B.     Procedural Background

On February 1, 2016, Defendants removed the case from Connecticut Superior Court to this Court. ECF No. 1. On March 30, 2016, Defendants filed an Answer and Counterclaim. Answer & Countercl., ECF No. 16. On April 11, 2016, Plaintiffs amended their Complaint. ECF No. 17. On April 27, 2016, Defendants filed an Answer and Counterclaim to the Amended Complaint. Answer & Countercl. to Am. Compl. ("Defs. Answer & Countercl."), ECF No. 18. On May 11, 2016, Plaintiffs filed a Response. Pls. Resp., ECF No. 19.

Discovery began in March 2016, ECF No. 14, but the parties modified their Rule 26(f) report in February 2017 and the Court issued a new scheduling order. ECF Nos. 31, 34. In April 2018, Defendants moved for sanctions for spoliation of evidence, ECF No. 60–63, and summary judgment. ECF No. 74–77. That same month, Plaintiff moved for summary judgment on the Defendants' counterclaim of intentional spoliation. ECF No. 80–82.

On December 5, 2018, the Court held a hearing on all pending motions. Minute Entry, ECF No. 100.

## II.    STANDARD OF REVIEW

Three standards of review govern the motions before the Court: (1) the standard for summary judgment, (2) the standard for sanctions for spoliation, and (3) the standards for the admission or preclusion of expert witnesses and reports at trial.

### A.  Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that no genuine issues of material fact remain in dispute and that it is thus "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and a factual issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citations omitted).

If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is inappropriate. *See Security Insurance Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict").

### B.  Spoliation of Evidence

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Courts have "broad

discretion" in deciding whether and how to sanction parties for spoliation of evidence. *West*, 167 F.3d at 779; *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . .") (citations omitted).

To obtain sanctions for spoliation of evidence, the movant must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002), *superseded in part* by FED. R. CIV. P. 37(e) (2015) (concerning electronically stored information) (internal quotation marks and citation omitted).

District courts have "broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial . . . , to declare a mistrial if trial has already commenced, or to proceed with a trial with an adverse inference instruction; [additionally,] discovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence . . . ." *Residential Funding Corp.*, 306 F.3d at 113.

The Second Circuit, however, has made it clear that "sanction[s] should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d at 779.

## C. Admission or Preclusion of Expert Witnesses Testimony

District courts must act as gatekeepers to exclude unreliable expert testimony. FED. R. EVID. 702, Advisory Committee's Notes to the 2000 Amendments; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, (1999) ("We conclude that Daubert's general holding—setting forth the trial judge's general gatekeeping obligation—applies not only to testimony based on scientific knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge") (internal citations omitted).

Rule 702 of the Federal Rules of Evidence establishes a two-part reliability test. FED. R. EVID. 702. First, the expert must be "qualified as an expert by knowledge, skill, experience, training, or education." *Id*. Second, the expert's opinion must meet a four-part threshold test: (1) the opinion must "help the trier of fact to understand the evidence or to determine a fact in issue", (2) it must be based on "sufficient facts or data", (3) it must be "the product of reliable principles and methods", and (4) that the expert must have "reliably applied the principles and methods to the facts of the case" to derive the opinion. *Id*. at (a)–(d).

In short, expert testimony is reliable when the expert is qualified and has employed reliable methods to derive findings that are relevant to the case at hand. *Id*.; see also *Pugliano v. U.S.*, 315 F. Supp. 2d 197, 202 2002 (D. Conn. 2004) ("The final requirement of Rule 702 is that the expert witness must be able to assist the trier of fact to reach accurate results. This is the so-called 'fit' requirement.").

Although "[t]rained experts commonly extrapolate from existing data," neither *Daubert* nor the Federal Rules of Evidence require "a district court to admit opinion evidence . . . connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is

simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997). The proponent of expert testimony bears "the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Even if a party establishes the reliability and relevance of an expert witness's testimony, a court may still exclude some or all of the witness's testimony "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. CIV. P. 403.

Federal Rule of Civil Procedure 26 permits parties to submit rebuttal expert testimony to the jury. FED. R. CIV. P. 26. Rebuttal testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D)(ii). "The scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report[.]" *Allen v. Dairy Farmers of America, Inc.*, 09–cv.–230, 2013 WL 211303, at *5 (D.Vt. Jan. 18, 2013) (quoting *T.C. Sys. Inc. v. Town of Colonie, New York*, 213 F.Supp.2d 171, 180 (N.D.N.Y.2002)) (internal citations and quotation marks omitted).

Further, "[a] rebuttal expert report is not the proper place for presenting new legal arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Ebbert v. Nassau Cty.*, 05 Civ. 5445 (FB)(AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008). While a rebuttal expert may not present new arguments, he or she is permitted to employ different methodologies than the opposing party's expert "for the purpose of rebutting or critiquing the opinions of [that] expert witness." *Park W. Radiology v. CareCore Nat'l LLC*, 675

F.Supp.2d 314, 326 (S.D.N.Y.2009). "[A] district court has wide discretion in determining whether to permit evidence on rebuttal." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992).

When the proponent of expert testimony has disclosed an expert after the deadline for disclosure of experts has passed, the court may sanction the party by excluding the expert. Fᴇᴅ. R. Cɪᴠ. P. 37. The Second Circuit has advised, however, that the preclusion of an expert is a harsh remedy that "should be imposed only in rare situations." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71–72 (2d Cir. 1988).

Second Circuit courts weigh four factors when determining whether to preclude an expert: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

## III.   DISCUSSION

### A.   Negligence

To substantiate a claim of negligence in Connecticut, a party must prove duty, breach, causation, and actual injury. *McDermott v. State*, 316 Conn. 601, 609, 113 A.3d 419, 425 (2015), quoting *LePage v. Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002) ("The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . . ); *Rawls v. Progressive N. Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576, 583 (2014) ("We turn next to the well established law of negligence. In order to make out a prima

facie case of negligence, the plaintiff must submit evidence that, if credited, is sufficient to establish duty, breach of duty, causation, and actual injury.")

"A defendant's duty and breach of duty is measured by a reasonable care standard, which is the care that a reasonably prudent person would use under the circumstances." *Rawls*, 310 Conn. at 776, *quoting Hoelter v. Mohawk Service, Inc.*, 170 Conn. 495, 501, 365 A.2d 1064 (1976) (internal citations and quotations omitted). A plaintiff must first prove that the defendant did not exercise reasonable care. *Id.* at 777. "After the plaintiff establishes that the defendant did not exercise reasonable care, the plaintiff has the burden of proving that the defendant's negligence caused the plaintiff's injuries." *Id.*

In vehicle cases, Connecticut courts have "consistently . . . recognized that a collision alone does not create a rebuttable presumption of negligence and causation." *Id.* at 778, citing *Winn v. Posades*, 281 Conn. 50, 54–56, 63, 913 A.2d 407, 415 (2007) ("Even with the existence of evidence of unreasonable speed, the plaintiff nevertheless must demonstrate that the unreasonable speed was the proximate cause of the accident"); *O'Brien v. Cordova*, 171 Conn. 303, 306, 370 A.2d 933, 934–35 (1976) ("Common experience shows that motor vehicle accidents are not all due to driver negligence.") (internal citation omitted)).

Evidence of negligence therefore is required, particularly on the element of proximate cause.[4] A plaintiff may demonstrate negligence and proximate cause through a number of facts, including: (1) his or her own eyewitness testimony; (2) his or her own testimony about

---

[4] For example, though Connecticut's law dictates that vehicles should be driven a reasonable distance apart, CONN. GEN. STAT. § 14-240, and at reasonable speeds, CONN. GEN. STAT. § 14-218a, mere statutory violations, absent additional facts, would not prove negligence or proximate cause. *Cf. O'Brien*, 171 Conn. at 306 ("All the evidence indicates is that there was a rear-end collision. Common experience shows that motor vehicle accidents are not all due to driver negligence."); *Winn*, 281 Conn. at 63 ("Even with the existence of evidence of unreasonable speed, the plaintiff nevertheless must demonstrate that the unreasonable speed was the proximate cause of the accident.").

experiencing the rear-end collision; (3) demonstrating to the jury about how the collision had occurred; (4) a law enforcement official's testimony about the position of the vehicles and the damage they sustained; (5) evidence about the weather at the time of the accident and straightness of the road; and (6) common knowledge about remaining alert to and stopping for traffic. *See Rawls*, 310 Conn. at 789.

Together, the Connecticut Supreme Court's decisions in the *Rawls* and *Winn* cases require plaintiffs to present evidence of negligence; sudden emergency cases are not treated any differently.

The sudden emergency doctrine dictates that "[i]n determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement (Second) of Torts § 296 (1965). "[F]or the doctrine to apply the defendant must establish (1) that an emergency existed, (2) that the serious situation was not created by [the defendant], and (3) that confronted with an emergency, he choose a course of action, which would or might have been taken by a person of reasonable prudence in the same or a similar situation." *Yashaya v. Acosta*, No. 136036266S, 2016 WL 5415750, at *6–7 (Conn. Super. Ct. Aug. 29, 2016)

The sudden emergency doctrine does not relieve a party of the duty to exercise reasonable care. *Degnan v. Olson*, 136 Conn. 171, 177, 69 A.2d 642, 645 (Conn. 1949), *citing Puza v. Hamway*, 123 Conn. 205, 213, 193 A. 776, 777 (1937) ("A correct statement of the principle is that 'In an emergency not due to his own negligence, one is not relieved of all obligation to exercise care, but is re-required to exercise the care of an ordinarily prudent person

acting in such emergency.'"). Rather, if a party alleges facts sufficient to activate the sudden emergency doctrine, the trial court—or jury—must consider whether the party's actions were objectively reasonable given the specific emergency. *Yashaya*, 2016 WL 5415750, at \*7 ("The actor may still be found to be negligent if, notwithstanding the emergency, his acts are found to be unreasonable.")

And each element of negligence, including who owed a duty, whether an owed duty was breached, if that breach constituted the cause of the alleged harms, and if the alleged harms amounted to actual injury, is typically "a mixed question of fact and law." *See McDermott*, 316 Conn. at 610–11 ("Therefore, the trial court did not make the requisite factual findings necessary to conclude that the defendant had voluntarily assumed a greater duty than that which was legally required." (internal citations and quotations omitted)); *cf Rawls*, 310 Conn. at 780 ("The present [involves] a rear-end collision in which the plaintiff's vehicle was stopped at a red traffic light . . . . First, the jury could have considered the fact that the plaintiff was stopped at a red traffic light and that traffic lights are normally highly visible to drivers.").

The parties agree that Mr. Cela drove Carlisle Carrier's tractor-trailer into Linda Aidoo's Toyota. Pls. 56(a)(2) Facts ¶ 1; Defs. 56(a)(1) Facts ¶ 1–2, 8; Defs. Mot. for Summ. J. at ¶ 7. They disagree on whether Mr. Cela's driving was negligent and the proximate cause of Plaintiffs' harms. Defs. Mot. for Summ. J. at ¶ 6. Plaintiffs allege that Mr. Cela had the opportunity to avoid the collision and that his failure to stop or swerve was unreasonable, negligent, and the proximate cause of all injuries. Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 3.

Defendants argue that Plaintiffs created a sudden emergency, and that Mr. Cela behaved as a reasonable driver would under the circumstances. Defs. Mot. for Summ. J. at ¶ 10–19. Defendants therefore argue that Mr. Cela did not drive negligently and that Plaintiffs were the proximate cause of all injuries. *Id*. Defendants contend that they are entitled to judgment as a matter of law, because "Plaintiffs will not be able to prove that any negligence on the part of moving defendants caused the accident and plaintiffs' alleged damages." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 1.

The Court disagrees.

Because a duty is a prerequisite for a breach, the Court begins its analysis with the element of duty.

### 1. Duty

Under Connecticut law, all highway users are under a duty to exercise reasonable care. *Sic v. Nunan*, 307 Conn. 399, 408, 54 A.3d 553, 559 (2012)("[O]ur case law is clear that a driver is entitled to assume that other users of the highway will obey the law, including lawful traffic regulations, and observe reasonable care, until he knows or in the exercise of reasonable care should have known that the assumption has become unwarranted.") (internal quotation and citation omitted)).

The parties agree that they were fellow travelers on I-95 South. Am. Compl., ECF No. 17; Defs. 56(a)(1) Facts at ¶¶ 1–3. The Aidoos thus owed Mr. Cela a duty of reasonable care and he, in turn, owed them a duty of reasonable care, even if they created a sudden emergency. *Id*.; *Yashaya*, 2016 WL 5415750, at *6–7. The undisputed collision, however, is not dispositive of

either party's duty. As a result, the issue of duty does not provide a basis for granting summary judgment for Defendants.

## 2. Breach

The mere fact of a collision also is not dispositive of a breach, if a duty does exist. *Rawls*, 310 Conn. at 778 ("[T]he plaintiff must provide at least "some evidence" on which a jury reasonably could find that the defendant was negligent . . . ."). This is particularly true when a defendant-driver alleges a sudden emergency, as that defendant may be relieved of liability for causing the collision, if he or she behaved reasonably given the circumstances. *See Puza v. Hamway*, 123 Conn. 205, 213–14, 193 A. 776, 780 (Conn. 1937) ("If, then, the jury found that the defendant was not negligent up to the time when he first saw the defendant, there was nothing which the defendant thereafter did upon which liability could be claimed.").

When each side asserts credible, contradictory facts regarding the circumstances and behaviors leading up to a collision, the issue of breach is a question of fact, not law. *See Rawls*, 310 Conn. at 776, n12 ("If a jury finds that the defendant had a duty and breached that duty— such as by driving too fast—and that the defendant collided with a stopped car, there is little doubt about whether the defendant's negligence was the cause of the collision. Thus, although eyewitness or expert testimony often serves as more compelling evidence, there is no bright line rule that a plaintiff always must offer it."). That is the case here.

The parties each contend that they acted reasonably under the circumstances and did not breach the duties they owed their fellow travelers. See, e.g., Pls. 56(a)(2) Facts at 2, 4, 7; Ex. 1; Defs. 56(a)(1) Facts at ¶ 13. Defendants allege, however, that "Plaintiffs have not removed the

issue[] of negligence . . . from the field of conjecture and speculation." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 3 (internal underlining and quotations omitted). The Court disagrees.

Plaintiffs assert that they behaved reasonably under the circumstances and properly alerted fellow travelers to the Toyota's stationary condition. Pls. 56(a)(2) Facts at 4, 7. Plaintiffs allege that they could not move the Toyota to safety because it would only roll backward when shifted into the neutral or drive positions. Pls. 56(a)(2) Facts, Ex. 2; Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 2. Plaintiffs claim that they activated the Toyota's hazard lights and that another driver's 911 call corroborates that the Toyota had "its hazards on" prior to the collision. Pls. 56(a)(2) Facts at 4, 7; Ex. 1 [Audio recording of third-party 911 caller.]. Plaintiffs contend— and Trooper Myer confirms—that I-95 South was an illuminated highway. Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 3, 8; Pls. 56(a)(2) Facts, Ex. 7 at 1, 3. Plaintiffs allege that other drivers avoided colliding with the stopped Toyota. Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 3, 8. Plaintiffs argue then that Mr. Cela's conduct was unreasonable and negligent. *Id*. at 5.

Defendants assert various comparative negligence arguments. They claim that the Toyota was "parked in the center lane" of an interstate highway for no clear reason, and that Plaintiffs "refuse[d]" to move it. Defs. Mot. for Summ. J. at ¶ 7c–e; Defs. 56(a)(1) Facts at ¶ 5. They allege that there is no evidence that the Toyota's flashers and lights were functioning properly or activated, and that Mr. Cela did not see any warning lights. Defs. Mot. for Summ. J. at ¶ 7b; Defs. 56(a)(1) Facts at ¶ 8. As noted above, however, Mr. Cela has struggled to remember whether he saw the vehicle in the moments before the collision or not. Pls. 56(a)(2) Facts, Ex. 5 [Dep. of Erald Cela] at 51–55. Still, Defendants argue that as a result of Plaintiffs' actions,

"Defendant Erald Cela was unable to see the Aidoo vehicle or perceive that it was stopped in the roadway until he was immediately behind it." Defs. 56(a)(1) Facts at ¶ 12.

In essence, Defendants claim that Plaintiffs' unreasonable reaction to the Toyota's breakdown breached Plaintiffs' duties to fellow drivers such as Mr. Cela. Defs. Defs. 56(a)(1) Facts at ¶ 13. ("Furthermore, Moving Defendants allege that Plaintiff Linda Aidoo was negligent for, *inter alia*, stopping the Corolla in the center lane of Interstate 95, failing to move the Corolla off of the travel portion of Interstate 95, failing to provide adequate warning of her disabled vehicle to oncoming motorists, and obstructing and impeding traffic.").

In the alternative, Defendants assert that Plaintiffs created a sudden emergency that modified the reasonableness required of Mr. Cela. *See Degnan*, 136 Conn. at 177; *Yashaya*, 2016 WL 5415750, at *7. Defendants claim that Mr. Cela "faced an emergency not of his own making . . . in the disabling of the vehicle." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 6. Defendants allege that Mr. Cela did not see any warning lights. Defs. Mot. for Summ. J. at ¶ 7b; Defs. 56(a)(1) Facts at ¶ 8. Given this sudden emergency, according to Defendants, Mr. Cela "[d]id not have sufficient time to perceive and avoid making contact with Plaintiffs' vehicle, and to have swerved to prevent striking the Corolla would have involved moving into another lane of traffic on either side." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 6. For these reasons, Defendants thus contend that Mr. Cela "behaved as a reasonably prudent person would have acted in similar circumstances." *Id*.

Plaintiffs dispute each of these facts. Plaintiffs allege that other motorists were able to "driv[e] around them to the left and the right," and that some of these drivers "beeped their horns." Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 2. Plaintiffs allege that Linda Aidoo

turned on the Toyota's warning lights, Pls. 56(a)(2) Facts at 4, 7; Ex. 1, and that Mr. Cela still failed to slow or brake before hitting the Toyota. Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 1.

Plaintiffs argue that "Mr. Cela, more likely than not, was negligent. No surmise or guesswork is required. The evidence is quite clear and does not lend itself to any other logical conclusion." *Id*. at 5. The Court disagrees.

At the summary judgment stage, genuine issues of material fact remain, including whether the Toyota's hazard lights were flashing, whether Mr. Cela could have avoided hitting the Toyota given the weather and road conditions, and more. Both Plaintiffs and Defendants have submitted credible evidence and a jury must resolve whether: (1) Plaintiffs behaved reasonably or breached their duty to fellow motorists; (2) Plaintiffs created a sudden emergency; and (3) Defendants breached their duty to fellow travelers, using an objectively reasonable standard or a modified objectively reasonable standard given a sudden emergency.

As a result, summary judgment cannot be granted on the issue of whether either party breached their respective legal duties.

### 3. Proximate Cause

As discussed above, the fact of a collision is not dispositive of causation, *see Rawls*, 310 Conn. at 776, and evidence of unreasonable speeding is insufficient to establish proximate cause. *See Winn*, 281 Conn. at 64 ("Our conclusion today is simply that we decline to vary from our previous case law that consistently has concluded that proof of excessive speed by the operator of a motor vehicle is insufficient, standing alone, to establish legal cause."). The crash-scene statements of a driver, standing alone, "cannot be interpreted as an admission of any

negligent conduct." *O'Brien*, 171 Conn. at 306. Rather, Connecticut courts require a plaintiff to prove "that the defendant's negligence caused the plaintiff's injuries." *Rawls*, 310 Conn. at 776.

The "test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." *Winn*, 281 Conn. at 59–60, *quoting Paige v. St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–26, 734 A.2d 85, 95 (1999). This test does not require a plaintiff to eliminate all other possible causes of an accident, but rather to "establish that it is *more likely than not* that the cause on which the plaintiff relies was in fact a proximate cause of the accident." *Rawls*, 310 Conn. at 777, *citing Hicks v. State*, 287 Conn. 421, 438, 948 A.2d 982, 995 (2008) (emphasis in original).[5]

Plaintiffs claim that "[t]his collision, and the resulting injuries and losses . . . were due to the negligence and carelessness of the defendant-driver." Am. Compl. ¶ 13, 33. Defendant claims that "Plaintiffs have not removed the issue[] of . . . proximate cause from the field of conjecture or speculation." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 3 (internal underlining and quotations omitted).

Defendants argue that Plaintiffs cannot prove causation for several reasons: (1) no eyewitness, including Plaintiffs, saw the tractor-trailer before it collided with the Toyota; (2) Plaintiffs have not proved that the "back flashers and lights were on and/or functioning properly . . . before impact;" (3) Plaintiffs "have provided no evidence of any specific mechanical failure that might have caused the Corolla to become disabled;" (4) it is unknown

---

[5] Although the Connecticut Supreme Court in *Rawls* drew heavily from *Hicks* regarding the proximate cause test, the *Rawls* decision factually distinguished its holding from *Hicks*—as the *Rawls* decision had done with *Winn* and other leading vehicle negligence cases. *Rawls*, 83 A.3d at 590, fn 13. Rawls' vehicle was stationary at the point of impact, while both cars were moving in *Hicks*. *Id.* ("[I]t might be easier to prove negligence when there is an independent eyewitness but also more difficult to prove causation when both cars are in motion."). The present case involves one stationary and one moving vehicle, and therefore is factually closer to *Rawls* than *Hicks*.

whether Plaintiffs could have maneuvered to the shoulder of the highway; and (5) Plaintiffs cannot prove to "any degree of professional certainty that [Mr.] Cela could have avoided striking the Corolla." Mem. of Law in Supp. of Defs. Mot. for Summ. J. at 3–4.

The Court disagrees.

As detailed above, Plaintiffs admitted during depositions that they did not see Mr. Cela's approaching vehicle immediately before the collision. *See e.g.*, Pls. 56(a)(2) Facts, Ex. 4 [Dep. of Nana Aidoo] at 32–33. Further, Linda Aidoo stated in her deposition that she did not remember the period after the collision, Pls. 56(a)(2) Facts, Ex. 3 [Dep. of Linda Aidoo] at 77, and Mr. Cela's recollection of the events has vacillated. Pls. 56(a)(2) Facts, Ex. 5 [Dep. of Erald Cela] at 51–55. Thus, neither side can definitively reconstruct what happened in the moments leading up to the accident.

But a jury could reasonably infer from the third-party 911 call and the pre-collision recollections of the Aidoo sisters that the Toyota's hazard lights were activated. Pls. 56(a)(2) Facts, Ex. 1, Ex. 4 [Dep. of Nana Aidoo] at 28. Of course, proximate cause does not hinge on a single fact such as what occurred in the moments before a collision. *Rawls*, 310 Conn. at 778 (describing Connecticut law's "totality of the evidence" approach in automobile negligence cases). As a result, there must be more evidence in the record in order for Plaintiffs to meet their burden.

Here, while the cause of the Toyota's mechanical failure is unknown, *see, e.g.*, Pls. 56(a)(2) Facts, Ex. 2, there is evidence that the sisters tried and failed to move the car. *Id.*, Ex. 4 [Dep. of Nana Aidoo] at 21, 27; Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 2. The parties agree that the Toyota was approximately three years old at the time of the accident. *See, e.g.*, Pls.

56(a)(2) Facts, Ex. 3 [Dep. of Linda Aidoo] at 62. And Linda Aidoo recalls no mechanical problems with the vehicle in the days and weeks leading up to the accident. *Id*. at 63. In any event, if the Aidoos were culpable in the disabling of the Toyota, that fact alone would not be dispositive; it would be evidence probative of Defendants' theories of contributory negligence or sudden emergency.

Plaintiffs credibly allege that Mr. Cela could have avoided striking the Toyota. Pls. Memo. in Opp. to Defs. Mot. for Summ. J. at 12. Plaintiffs contend—and defendant-driver agreed at one point—that Mr. Cela did not see the Toyota or saw it only briefly before the collision. Pls. 56(a)(2) Facts, Ex. 5 [Dep. of Erald Cela] at 55, Ex. 7 at 2. The "disabling damage" to the Toyota reported by Trooper Myer and corroborated by photos of the vehicle are sufficient to allow a jury to infer that the accident was at a high speed and perhaps, the result of defendant-driver's negligence. Pls. 56(a)(2) Facts, Ex. 7 at 3, Ex. 9. Trooper Myer's report of "no indications of braking . . . " and damage to the roadway also could support a proximate cause finding against the Defendants. *Id*. at 10, 13.

While Plaintiffs characterize the facts as "an unbroken chain of events . . . that resulted in serious injuries . . . .", *id*., the issue before the Court is whether Plaintiffs can survive a motion for summary judgment on the issue of proximate cause. The answer is yes.

The Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Gary Friedrich Enters., L.L.C.*, 716 F.3d at 312, and, under Connecticut law, consider the causal chain suggested by "the totality of the evidence." *See Rawls*, 310 Conn. at 778. Because, viewing the totality of the evidence here, there is sufficient evidence for a jury to infer that Mr. Cela's actions were a substantial factor in

Plaintiffs injuries, *see Rawls*, 310 Conn. at 777, summary judgment cannot be granted on the element of proximate cause.[6]

## B.    Defendants' Counterclaim for the Spoliation of Evidence

Defendants initially filed a spoliation counterclaim and later filed a motion for sanctions for spoliation. Answer, ECF No. 16; Defs. Mot. for Sanction for Pls. Spoliation of Ev., ECF No. 60. On November 30, 2018, Defendants conceded "that defendants do not have a cognizable cause of action under Connecticut law for a plaintiff's intentional spoliation of evidence[.]" Defs./Countercl. Pls. Response in Opp. to Pls./Countercl. Defs. Mot. for Summ. J on the Countercl. of Spoliation, ECF No. 99, at 2.

At the December 5, 2018 hearing, Defendants explained that while they are no longer seeking counterclaim damages in tort for Plaintiffs' alleged spoliation, they are still seeking sanctions. Minute Entry, ECF No. 100. At the hearing, Plaintiffs did not object to Defendants' withdrawal of the counterclaim. *Id*.

Accordingly, Plaintiffs' motion for summary judgment on the counterclaim of spoliation will be denied as moot. ECF No. 80.

## C.    Sanctions for Spoliation

Defendants' motion for sanctions for spoliation remains before the Court. Defs. Mot. for Sanctions. As sanction for Plaintiffs' alleged spoliation of the Toyota, Defendants seek one of three sanctions: (1) dismissal of the case; (2) a jury instruction that "as a matter of law . . . Plaintiff Linda Aidoo could have moved the Corolla out of the center lane of I-95 prior to the

---

[6]In addition, the Court notes that the parties raised further issues of vicarious liability and comparative negligence in their formative briefings. Am. Compl. ¶¶ 19–20, 38–39; Answer ¶¶ 19–20, [pages] 7–8. The parties did not brief these issues at the summary judgment stage. The Court reserves these fact-intensive issues for trial as well.

accident;" or (3) an instruction that the jury may draw an "adverse inference, that is, that the evidence would have been unfavorable to the Plaintiff." *Id*. at 16–17.

Plaintiffs argue that Defendants have failed to meet their burden to prove all three elements of spoliation: control, culpable state of mind, and relevance. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions, ECF No. 73, at 7 ("Defendants are not entitled to dismissal or an adverse inference because they have failed to establish that there was a spoliation in this case[.]"). The Court agrees.

### 1. Control of the Car

To obtain sanctions for evidence spoliation, the movant must show that the alleged spoliator had control over the evidence. *Residential Funding*, 306 F.3d at 107 (2d Cir. 2002). "The concept of 'control' has been construed broadly." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180–181 (S.D.N.Y. 2006). In cases involving documentary evidence, courts in the Second Circuit have repeatedly held that Rule 34 "does not require that the party have legal ownership or actual physical possession of the documents at issue[.]" *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007), quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y.1997). In essence, such Second Circuit decisions suggest that a party cannot evade production when it could gain control of the evidence through reasonable means.

In a recent case involving an allegedly spoliated automobile, the plaintiff had control over the vehicle, even though he no longer held title to the vehicle, because he and his counsel had done nothing to prevent the "inadvertent spoliation" of the vehicle. *In re: Gen. Motors LLC*

*Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9480315, at *2 (S.D.N.Y. Dec. 29, 2015) ("Here, Plaintiff indisputably knew or should have known that his car was 'relevant to future litigation' by June 16, 2014, when he retained counsel. Thus, even assuming arguendo that Plaintiff may not be held responsible for the car's preservation or destruction after transferring title to State Farm on June 30, 2014, the duty to preserve arose prior to that transfer — while Plaintiff had control of the car . . . . Plaintiff and his counsel failed to take any steps to ensure that the car would be preserved even though they plainly knew that Plaintiff might pursue a claim against New GM . . . and knew or should have known that the car itself might be critical evidence in connection with any such claim.").

Similarly, in *Silvestri*, a Fourth Circuit case cited favorably by a number of Second Circuit courts,[7] a Plaintiff who never held title to an automobile was nevertheless found to have had "control" because he conducted numerous inspections of it and "failed to take any steps . . . to prevent the spoliation of evidence." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591–92 (4th Cir. 2001). Both *In re: Gen. Motors* and *Silvestri* suggest that when a party has some control over evidence before or during litigation, that party must at least notify opposing counsel that the evidence might be spoliated. Further, that party has sufficient control and responsibility if spoliation of evidence does occur.

As a result, Plaintiffs had control of the Toyota. Nationwide worked with Plaintiffs to preserve the vehicle both before title transferred to Nationwide, Pls. Obj. and Mem. in Opp'n. to

---

[7] As noted in *In re: Gen. Motors*, the Silvestri court was applying the Fourth Circuit's two-prong spoliation test in a case that involved spoliation of the most critical evidence to a party. *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *4, fn 5. Thus, *Silvestri* is clearly distinguishable from *In re: Gen. Motors* and this case. Nevertheless, Second Circuit courts have found the *Silvestri* analysis of control persuasive, and *Silvestri* is one of the few federal cases to analyze "control" in the context of automobile spoliation. The Court therefore finds *Silvestri* illustrative of the broad contours of control in automobile spoliation cases.

Mot. for Sanctions, Ex. M, and after Nationwide held title. *Id*., Ex. Q. Nationwide arranged for both parties' experts to access the Toyota at the Copart lot on December 3, 2015. *id*., Ex. F at 6, and preserved the Toyota at Plaintiffs' request through December 9, 2015. *Id*., Ex. Q. During that time, Plaintiffs exchanged numerous e-mails with Defendants to facilitate discovery, including physical inspection of the vehicle. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions at 5, Ex. O. In sum, even after title transferred to Nationwide, Plaintiffs retained some control over the Toyota.

Nevertheless, on December 22, 2015, against Plaintiffs' wishes, *id*., Ex. W, Nationwide sold the Toyota at auction. *Id*., Ex. F at 13. The Copart records gained through discovery suggest that Nationwide had planned to sell the vehicle at that auction since October, when it gained legal title. *Id*., Ex. F at 13. Nothing in the record suggests that Nationwide communicated this plan to Plaintiffs. The planned auction of the vehicle simply suggests that Plaintiffs' control over the vehicle was likely to extinguish on December 22, 2015, as it did. But before December 22, 2015, Plaintiff had sufficient control over the car, consistent with the Second Circuit's standards. Accordingly, Defendants have shown that Plaintiffs had control of the Toyota before it was sold and destroyed.

## 2. Culpable State of Mind

To obtain sanctions for evidence spoliation, the movant must show "that the [evidence was] destroyed with a culpable state of mind[.]" *Residential Funding Corp.*, 306 F.3d at 107. "In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); see *also Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 410 (S.D.N.Y. 2015), *on

*reconsideration in part (on other issues)*, No. 13-CV-8171 JMF, 2015 WL 3739276 (S.D.N.Y. June 15, 2015) ("PilePro argues that it did not act with a culpable state of mind because it believed that information about how many people visited the Website would be available through Google Analytics . . . . But, as explained earlier, the relevant data was not available through Google Analytics. And, to the extent that PilePro intended to rely on Google Analytics, it was incumbent upon PilePro to confirm that Google Analytics was functioning properly."). The duty to preserve evidence, however, does not extend indefinitely. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) ("Here, not only did the defendant not request that Plaintiffs preserve the range and range hood, Hamilton Beach, through its representative, affirmatively disclaimed any interest in the evidence. Hamilton Beach did so, moreover, after being provided a full opportunity to inspect the items.").

Here, Plaintiffs took affirmative steps to preserve the Toyota for many months. *See* Defs. Mot. for Sanctions; Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions. Plaintiffs provided the airbag module for both parties' use at trial. Defs. Mot. for Sanctions at 3. Plaintiffs, through Nationwide, made the vehicle available for Defendants' inspection on December 3, 2015. Pls. Obj. and Mem. in Opp'n. to Mot. for Sanctions at 5, Ex. F at 6. The parties' experts shared photos of the vehicle's taillights. *Id.* at Ex Z [Report of Defendant's Expert's Vehicle Tail Light Examination, April 12, 2016]. Plaintiffs asked Nationwide not to release the hold on the vehicle and called the holding lot about purchasing the Toyota. *Id.*, Ex. W, Ex. X. Following those calls, Nationwide—not Plaintiffs—sold the car at auction. *Id.* Ex. F at 13.

Plaintiffs cooperated in discovery and facilitated Defendants' access to a vehicle that was no longer theirs for a reasonable period of time. The facts of this case are inapposite to cases in

which parties have done nothing to preserve evidence for an opposing party's inspection. *See Zubulake*, 220 F.R.D. at 219 ("UBS has offered *no* explanation for why these tapes are missing.") (emphasis original); *Skyline Steel*, 101 F. Supp. 3d at 410 ("[A]t a minimum, counsel should have confirmed that a PilePro employee looked at the Google Analytics data to ensure that it was actually being generated.").

Nevertheless, Plaintiffs could have followed up on their initial e-mail and ensured that the vehicle was held and not sold. While this inaction arguably may make them culpable under the ordinary negligence standard, this is a close call and, because Defendants have failed to prove the relevance of the evidence in question, as discussed below, the Court need not resolve this issue.

### 3.    Relevance of the Vehicle

To obtain sanctions for evidence spoliation, however, the movant also must show "that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107. In the context of spoliation, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Id.* at 108–09.

"Instead, to establish relevance, the party seeking sanctions 'must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been' favorable to its case." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *3 ("As Plaintiff correctly notes, however, New GM 'merely makes conclusory statements that the evidence from crush measurements and interior impacts would have been 'favorable.' That is insufficient to warrant the imposition of sanctions."), citing *Residential*

*Funding Corp.*, 306 F.3d at 109. "Thus, for sanctions to be warranted, 'there must be extrinsic evidence to demonstrate that the destroyed evidence . . . would have been unfavorable to the destroying party.'" *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *3, quoting *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06-CV-874 (ERK) (KAM), 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (internal quotation marks omitted).

Here, Defendants affirmatively pled the Toyota's mechanical failure early in the litigation, stating:

> Upon information and belief, plaintiff Linda Aidoo's car became disabled due to a mechanical condition while she was operating said vehicle on Interstate 95 southbound. Upon information and belief, when Linda Aidoo's car began showing signs of mechanical and/or equipment problems, she failed to maneuver her vehicle out of the travel lanes of the highway, even though she knew or should have known that her vehicle was about to come to a stop in the middle of a busy interstate highway and was thus about to become a hazard to traffic going southbound on Interstate 95.

Answer at 5-6 ["Sudden Emergency" section ¶¶ 3–4.].

More recently, Defendants have proposed a theory of operator error as opposed to mechanical failure. Defs. Mem. of Law in Supp. of Mot. for Sanctions for Pls. Spoliation of Evidence, ECF No. 61, at 11 ("As a result of Plaintiffs' failure to preserve the Corolla, Moving Defendants are unable to determine whether the Corolla indeed was disabled prior to the accident because of a mechanical issue (as opposed to driver error) [.]"). But Defendants have failed to provide the Court with any extrinsic evidence to support this theory, or to justify a finding that the evidence gained through another inspection would have been favorable to Defendants, or to warrant the imposition of sanctions. *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *3 ("[F]or sanctions to be warranted, there *must* be extrinsic evidence . . . .") (internal quotation and citation omitted, emphasis added).

34

While a second inspection of the Toyota might have provided evidence that the Toyota was in good working order before the collision and that operator error was to blame for the Toyota being stuck in the middle lane of I-95, Defs. Mem. of Law in Supp. of Mot. for Sanctions for Pls. Spoliation of Evidence, ECF No. 61, at 11; Minute Entry, ECF No. 100, Defendants have failed to lay the proper evidentiary foundation for this possibility, through expert testimony or otherwise. Because Defendants have not submitted sufficient evidence of relevance even though they affirmatively pled mechanical error at a formative stage of this litigation, the Court has no basis for imposing sanctions.

As a result, the Court denies Defendants' motion for sanctions for Plaintiffs' alleged spoliation of evidence. Defs. Mot. for Sanctions, ECF No. 60.

### D. Motions in Limine on Proposed Experts Rickard, Seluga, and Myer

Plaintiffs move to preclude certain opinions of Steven Rickard and request a Daubert hearing. Mot in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing. Defendants move to preclude the report and testimony of rebuttal expert Kristopher Seluga. Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga. Defendants also move to preclude the expert testimony of John Myer. Defs. Mot. In Limine to Preclude Purported Expert Testimony of Trooper John Myer.

#### 1. Preclusion of Certain Opinions of Steven Rickard and Request for Daubert Hearing

Plaintiffs move the Court to preclude twelve opinions of Steven Rickard: (1) "The distance between street lights is an important factor in this collision. Depending on the separation distance, dark areas could have been present;" (2) "It is significant to me to note that Mr. Cela

appeared, based upon the roadway physical evidence and final rest location of the tractor trailer, to have steered away at the last minute. This means he was attentive and was not "dozing off"; (3) "It is not that Mr. Cela did not see the Aidoo vehicle. However, because of the human factors issues present in this case and the concept of looming to be discussed below, Mr. Cela likely saw the vehicle but would not have <sic> reasonable expected it to be at a complete stop in the middle lane of three on Interstate 95. Mr. Cela did not expect, based on experience, or appreciate that danger"; (4) "Sometimes the lack of light prevents an automobile driver from seeing a road hazard until it's too late to avoid the object. Other times, the object may not be seen until an accident occurs"; (5) "Erald Cela had no reason to expect that any vehicle ahead would be stopped in the (center) travel lane"; (6) "In this accident, it appears Mr. Cela may have seen the stopped vehicle ahead, noted that there was a significant disparity in speed, and that his only alternative was to turn left"; (7) "In this accident, Erald Cela encountered a stopped vehicle, with minimal activated rear lighting, at night. This event resulted in a "sudden emergency" (surprise) which he could not have anticipated"; (8) "It is clear, from the time-distance calculations, that Erald Cela was not afforded sufficient time, distance, or opportunity to slow, change lanes or brake his vehicle to a stop to have avoided becoming involved in this accident"; (9) "Trooper John Myer cannot prove that Mr. Cela was in violation of this section [Conn. Gen. Stat. § 14-218(a)]"; (10) "Neither Mr. Cela or his employer (Carlisle Carriers) were in violation of any provisions of Title 49 at the time of this accident"; (11) "Mr. Cela's response to the situation presented to him fell within the realm of normal driving behavior"; and (12) "It is my opinion that neither Mr. Cela, nor his employer Carlisle Carriers, bear any responsibility in

the occurrence of this accident." Pls. Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing at 1–2.

Plaintiffs characterize these opinions as speculative, conjectural, and/or not based on a reasonable probability or valid methodology. Mem. of Law in Support of Mot. in Limine to Preclude Cert. Op. of Steven W. Rickard and Request for Daubert Hearing at 5, 7, 10, 12, 13, 14, 15, 16, 17. Plaintiffs contend that the first opinion does not fit the facts of this case. *Id*. at 6. Plaintiffs allege that opinions 2, 7, 10, 11, and 12 usurp the role of the judge and jury in this negligence case. *Id*. at 7, 14, 17, 18. Plaintiffs also contend that opinion 9, regarding Trooper Myer's inability to prove that Mr. Cela violated a specific Connecticut statute is "confusing, unreliable, and unhelpful to the jury." *Id*. at 16. Plaintiffs argue that "Rickard's proposed testimony might well be a classic example of inadmissible junk science in the courtroom." *Id*. at 1.

Accordingly, Plaintiffs request that "defendants be precluded from eliciting the . . . [12] opinions and testimony from their disclosed expert Steven W. Rickard at trial. Plaintiffs further move for oral argument and a *Daubert* hearing concerning this motion [to preclude the 12 opinions of Mr. Rickard]." *Id*. at 19.

Defendants respond that Mr. Rickard's opinions and testimony have been admitted by multiple courts. Defs. Mem. of Law in Opp. to Pls. Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing at 1 (alteration from original). Defendants provide three such opinions as exhibits. *Id*. at 1–2, Ex. A–C. Defendants rebut each of Plaintiff's challenges individually but summarize "Plaintiffs' primary objections to Mr. Rickard's opinions [are] that his opinions may conflict with some evidence in the case . . . and

that they have produced a purported expert who disagrees with Mr. Rickard." *Id*. at 3.

Defendants allege that "[n]either objection renders an expert's opinions inadmissible." *Id*.

Defendants concede that Mr. Rickard cannot testify as to "whether Defendants violated any

specific provision of Title 49[.]" (*i.e.*, Opinion 10). *Id*. at 15. Regarding Mr. Rickard's remaining

opinions, Defendants ask the Court to deny Plaintiffs' motion to preclude. *Id*. at 16.

At the December 5, 2018 hearing, Minute Entry, ECF No. 100, Plaintiffs acknowledged

that some of the opinions expressed in Mr. Rickard's expert report constitute proper expert

opinions. For this reason, the Court finds that a full *Daubert* hearing is unwarranted now. While

Plaintiffs may still seek to exclude purported unreliable expert testimony from Mr. Rickard, FED.

R. EVID. 702, the Court denies, without prejudice to renewal before or at trial, Plaintiffs' motion

to preclude certain opinions of Steven Rickard, but denies Plaintiffs' request for a Daubert

hearing. Mot. in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for

Daubert Hearing, ECF No. 90; *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.

Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) ("the Court will reserve judgment on the motion

until trial when admission of particular pieces of evidence is in an appropriate factual context.").

## 2.   Preclusion of the Report and Testimony of Kristopher Seluga

Defendants move the Court to preclude the report and testimony of Kristopher Seluga.

Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga.

Defendants contend that Plaintiffs are treating Mr. Seluga as an expert witness rather than a

rebuttal expert, and that Plaintiffs failed to disclose Mr. Seluga as an expert until March 14,

2018, more than five months after the deadline for Plaintiffs' disclosure of experts. *Id*. ¶¶ 2–6.

Defendants contend that Mr. Seluga performed "an entire accident investigation and analysis"

and that his report is "not intended solely to contradict or rebut the Rickard Report." *Id*. at ¶¶ 8, 11. Defendants claim that Plaintiffs unfairly waited until Defendants served Mr. Rickard's report to disclose Mr. Seluga under the guise of a "rebuttal expert." *Id*. at ¶¶ 25-27. Defendants request that the Court preclude Mr. Seluga "from offering any evidence or testimony[.]"*Id*. at ¶ 30. In the alternative, Defendants request that the Court "preclude Mr. Seluga from offering evidence or testimony regarding his analysis on Pages 6–14 of the report, and restrict Mr. Seluga to offering evidence and testimony solely rebutting and contradicting the Rickard Report." *Id*. at ¶ 32.

Plaintiffs argue that they "have no intention of calling Mr. Seluga in their case in chief" and that Mr. Seluga's testimony "will be offered solely to rebut the testimony of defense expert Mr. Rickard[.]" Pls. Obj. to Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Testimony of Kristopher Seluga at 1. Plaintiffs further argue that "a rebuttal expert's independent analysis is not a basis for preclusion" of the expert. *Id*. at 5 (alterations in original). Plaintiffs interpret controlling case law as support for precluding experts who perform too little analysis, including "not conducting [their] own alternative analysis." *Id*. at 6. Plaintiffs claim that Defendants "have not set forth any legitimate basis for the preclusion of Mr. Seluga." *Id*. at 9.

At the December 5, 2018 hearing, Minute Entry, ECF No. 100, Plaintiffs and Defendants acknowledged that the scope of Mr. Seluga's rebuttal testimony will largely be determined by the scope of Mr. Rickard's testimony. The Court denies, therefore, without prejudice and subject to renewal before or at trial, Defendants' motion to preclude the rebuttal expert report and testimony of Kristopher Seluga. Defs. Mot. in Limine to Preclude Rebuttal Expert Report and Test. of Kristopher Seluga, ECF No. 65; *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F.

Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context.").

### 3.    Preclusion of John Myer as a Witness

Defendants move the Court to preclude the opinions and/or expert testimony of Connecticut state trooper John Myer. Defs. Mot. In Limine to Preclude Purported Expert Testimony of Trooper John Myer ¶ 29–31. Defendants allege that while Trooper Myer investigated the crash scene on the night of the collision, he did not perform an accident reconstruction or "any analysis of the Corolla to determine the cause of any alleged malfunction or whether it was possible to move the vehicle from the highway before the accident." Defs. Mem. of Law in Support of Mot. In Limine to Preclude Purported Expert Test. of Trooper John Myer at 5.

Defendants contend that "[i]f Trooper Myer is qualified as an expert, he will have the 'aura of special reliability and trustworthiness' that surrounds experts, which will be compounded because he also carries with him the authority of a law enforcement officer." Defs. Mot. In Limine to Preclude Purported Expert Testimony of Trooper John Myer at ¶ 28. Defendants argue that the probative value of Trooper Myer's expert testimony would be substantially outweighed by the danger of unfair prejudice. *Id*. at ¶ 30. For that reason, Defendants ask the Court to preclude Mr. Myer from "offering any opinion or expert testimony in this case." *Id*. at ¶ 31.

In the alternative, Defendants move the Court to preclude Mr. Myer from "testifying 'that Ms. Aidoo would not have been able to move her vehicle from the center lane if it was stalled/broken down in that lane' or offering any opinion regarding the operational condition of

the Plaintiffs' vehicle." *Id*. at ¶ 32. Defendants also request that the Court preclude Trooper

Myer's testimony as untimely because Plaintiffs allegedly identified him as an expert several

months after their deadline for identifying experts "pursuant to the case management order[.]"

Defs. Mem. of Law in Support of Mot. in Limine to Preclude Purported Expert Testimony of

Trooper John Myer at 7.

Plaintiffs allege that "Trooper Myer's opinions based on his observations are admissible

either as lay opinions or as expert opinions." Pls. Obj. to Defs. Mot. in Limine Regarding Test.

of Trooper John Myer at 8. Plaintiffs contend that most or all of Trooper Myer's opinions are

admissible as lay opinions, including his appraisals of "the area where the accident occurred . . . .

[h]is opinions concerning Mr. Cela's lack of attentiveness, the visibility for drivers at the scene

of the accident, and even whether Mr. Cela was driving too fast for conditions on the roadway."

*Id*. at 9. Plaintiffs allege that Mr. Myer is also qualified as an expert on the basis of "his

education, training, and experience as a State Trooper pursuant to Fed. R. Evid. 702." *Id*. at 10.

With regard to Plaintiffs' ability to move the Toyota off of the highway, Plaintiffs claim

that the "opinion is based on a 'reasoning process familiar to average persons,' Trooper Myer's

own experience, and his first-hand observations[.]" *Id*. at 4. Plaintiffs contend that there is no

basis for the preclusion of Trooper Myer's fact testimony. *Id*. at 5. Plaintiffs allege that they did

not untimely disclose Trooper Myer as an expert, *id*. at 10–11, that Defendants were not

prejudiced by the timing of Plaintiffs' disclosure of Trooper Myer as an expert witness, *id*., and

that precluding his testimony would be a "harsh sanction" reserved for "rare situations." *Id*. at

10.

At the December 5, 2018 hearing, Minute Entry, ECF No. 100, Defendants clarified that they do not seek the complete exclusion of Trooper Myer. Rather, they seek to exclude any unreliable expert testimony from Mr. Myer. FED. R. EVID. 702. Because Trooper Myer will testify at the forthcoming trial, at the very least as a lay witness, the Court denies, without prejudice to renewal before or at trial, Defendants' motion to preclude the expert testimony of John Myer. Defs. Mot. in Limine to Preclude Purported Expert Test. of Trooper John Myer, ECF No. 69; *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context.").

## IV.    CONCLUSION

For the reasons discussed above, the Court now **DENIES** Defendants' motion for summary judgment, Defs. Mot. for Summ. J., ECF No. 74 and **DENIES** as moot Plaintiffs' motion for summary judgment on Defendants' counterclaim of intentional spoliation, Pls. Mot. for Summ. J., ECF No. 80.

The Court also **DENIES** Defendants' motion for sanctions for Plaintiffs' alleged spoliation of evidence. Defs. Mot. for Sanctions, ECF No. 60.

Finally, with respect to the various motions to preclude expert testimony, the Court **DENIES** without prejudice to renewal before or at trial Plaintiffs' motion to preclude certain opinions of Steven Rickard and **DENIES** Plaintiffs' request for a Daubert hearing, Mot in Limine to Preclude Certain Opinions of Steven W. Rickard and Request for Daubert Hearing, ECF No. 90, **DENIES** without prejudice to renewal before or at trial Defendants' motion to preclude the report and testimony of Kristopher Seluga, Defs. Mot. in Limine to Preclude

Rebuttal Expert Report and Test. of Kristopher Seluga, ECF No. 65, and **DENIES** without prejudice to renewal before or at trial Defendants' motion to preclude the expert testimony of John Myer, Defs. Mot. in Limine to Preclude Purported Expert Testimony of Trooper John Myer, ECF No. 69.

This case is now scheduled for trial; jury selection will be conducted on March 25, 2019, with trial to begin on March 26, 2019.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of December, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE